(No. 4238–

KENNETH L. MARTIN, ET AL, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 15, 1950.*

DAVID V. LANSDEN AND JULIAN JOHNSON, Attorneys for Claimants.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER AND C. ARTHUR NEBEL, Assistant Attorneys General, for Respondent.

SCHUMAN, C. J.

This case was heard on the amended motion to dismiss filed by respondent.

The motion is predicated on Section 45 of the Civil Practice Act, and claims that the complaint on its face shows it is insufficient in law to justify an award.

The first point raised by the motion is that wild geese, as a matter of law, are not in possession or control of respondent. In support of this they cite the case of *Missouri* v. *Holland*, 252 U. S. 416. In that case the State of Missouri sought to enjoin Federal Officials from enforcing the regulations under the Migratory Bird Treaty Act, and claimed exclusive authority over migratory birds. The court in its opinion said:

"No doubt it is true that as between a State and its inhabitants the State may regulate the killing and sale of such birds, but it does not follow that its authority is exclusive of paramount powers."

Indicating as between the State and its citizens, it may regulate the killing of birds.

Section 154 of the Game Code of Illinois, being Chapter 61, Smith Hurd Revised Statutes, provides as follows:

"The ownership of and title to all wild birds and wild animals within the jurisdiction of the State are hereby declared to be in the State, and no wild birds or wild animals shall be taken or killed, in any manner or at any time, unless the person or persons so taking or killing the same shall consent that the title thereto shall be and remain in the State for the purpose of regulating the taking, killing, possession, use, sale and transportation thereof, after such taking or killing, as hereinafter set forth. The taking or killing of wild birds or wild animals at any time, in any manner, and by any person, shall be deemed a consent on the part of such person that the title to such wild birds or wild animals shall remain in the State for the purpose of regulating the possession, use, sale and transportation thereof."

For the purpose of passing on this motion, the Court concludes that as to claimants the ownership of and title to wild geese are in the State of Illinois.

Under point 2 it is contended that the maintaining of the Horseshoe Lake State Game Preserve was a valid exercise of the police power for which the State is not liable to respond in damages. In support of this respondent predicates its position on general regulation being under the police power. However, respondent states that the Department of Conservation is given authority to acquire land by Section 3-C of the Game Code, which provides:

"C. The Department may establish and maintain units upon any lands owned or leased by the State of Illinois, with the consent and approval of the State Department or agency having jurisdiction over such lands, for the purpose of breeding and propagating wild birds and wild animals.

"The Department shall have the power and authority to select and purchase, or lease, receive donation or acquire, in accordance with the laws relating to eminent domain:

(a) Suitable lands for the breeding, hatching, propagation and conservation of wild birds or wild animals, or

(b) Lands or lands and waters to be used as public shooting and fishing grounds."

In order to establish the preserve the State had to do it by purchase, gift or by exercising eminent domain. Respondent cites numerous Illinois cases, which are cases stating that preservation of game is a police regulation. To this there can be no argument. Respondent then cites *Bailey* v. *Holland,* 126 Fed. 2d 317 as authority for this point. However the court on page 324 said:

"If the Government wishes to do more in the way of protecting migratory birds than prohibiting their slaughter, e.g., erect improvements to lessen the dangers resulting from the drainage of marshy areas, it must acquire some *proprietory interest* in the areas suitable for such uses. It was to meet this that Congress enacted the Migratory Bird Conservation Act. Land purchased under this Act becomes an 'inviolate sanctuary' over which the Government acquires complete dominion, so that it can erect buildings, fences, ditches, dams; or do any other affirmative acts upon the property for the general welfare of the birds. And in order to make this refuge more effective, the Secretary may prohibit hunting in that immediate vicinity. Merely because the government purchases certain lands in order to do more than prohibit hunting, it does not follow that compensation must be paid for all land closed to hunting.

"The distinction between a 'closed area' which may well embrace privately owned lands, and a federally owned 'inviolate sanctuary' seems clear. Hence the regulation establishing the closed area in question did not extend the boundaries of the refuge proper; nor did this regulation involve any invasion or taking of appellee's land.

"In this case owners of land stated only value of ground was in utilization for shooting migratory waterfowl, otherwise properties were practically valueless."

This case holds that the government in order to maintain a refuge must obtain a proprietory interest in the ground, which it could only do by purchase, eminent domain, etc.

For this reason the State of Illinois in acquiring the game preserve acquired proprietory interest in the land, and, therefore, the establishment of the preserve was not under police regulations, nor is its maintenance.

The Court concludes that the State could be held responsible for negligence in the operation of the pre-

4

serve where damages occur to private property from said negligence.

Under point 3 respondent contends the complaint fails to allege facts sufficient to show that respondent was under any duty to protect claimants from the actions of wild geese, or that the State was negligent, or that the State was liable to claimants by any alleged action or non-action of its employees. Under this point they cite numerous cases, all of which, in arriving at the conclusion that the State can regulate game, state that the owner of private property may kill predatory game that is damaging his property. Respondent states that claimants had the right to protect their property. However, under Sec. 28, Chapter 61, of the Game Code, which provides:

"The owners and tenants of farm lands and their children actually residing on such lands shall have the right to hunt, take and kill game, wild animals, wild fowls and birds of the kind permitted to be hunted, taken or killed by the provisions hereof, upon such lands and waters thereon, of which they, or their parents, are the bona fide owners or tenants, during the seasons when it is lawful so to do, without procuring hunting licenses.

"The owners and tenants of lands may destroy any wild animal or wild bird, other than a game bird, when such wild animal or wild bird is destroying property upon his or her land, but no poison or poisonous substance shall be used as a means of destroying such wild animal or bird.";

and Section 184, which provides:

"The owners and tenants of lands may destroy any wild bird or wild animal, other than a game bird or migratory game bird, when such wild bird or wild animal is destroying property upon his or her land, but no poison or poisonous substance shall be used, except chemicals may be used by owners or tenants of land on which levees and dams are located, by obtaining written permission from the Department.";

and Section 155, which provides in part:

"MIGRATORY GAME BIRDS—Waterfowl, including brant, wild ducks, geese, and swans, Anatidae; Cranes, including little brown, sandhill, and whooping cranes, Gruidae; Rails, including coots, gallinules, and sora and other rails, Rallidae; Shore birds, including avocets, curlews, dowitchers, godwits, knots, oyster catchers, phalaropes, plovers, sandpipers, snipe, stilts, surf birds, turnstones, willet, woodcock, and yellow legs, Limicolae; Pigeons, including doves and wild pigeons, Columbidae. GAME ANIMALS—Cot-

tontail rabbit, Sylvilagus floridanus; swamp rabbit, Sylvilagus aquaticus; Jack rabbit, Lepus Townsendii; Fox squirrel, Sciurus niger; Gray or cat squirrel, Sciurus carolinensis; Whitetail deer, Odocoileus virginianus. FUR-BEARING ANIMALS—Opossum, Didelphis virginiana; Raccoon, Procyon lotor; Mink, Mustela visor; Otter, Lutra Canadensis; Skunk, Mephitis mephitis; Muskrat, Ondatra Zibethicus; Beaver, Castor canadensis; Red fox, Vulpes fulva; Badger, Taxidea Taxus.

"It is unlawful to take any said wild birds and parts thereof (their nests and eggs), and wild animals and parts thereof, including their green hides, with such devices, during the protected seasons and in such manner, as defined by this Act.",

claimants are absolutely prohibited from doing the very thing the State contends they can do.

In the case of *Platt* v. *Philbrick*, 47 P. (2d) 302, (Calif.) appeared the following:

"Respondent argued that provision for compensation controls only in case where interest is taken in the land by the State in which case the officers have the right to occupy the property to propagate, feed, and protect the fish and game.

"Appellant contended Section permitting 'any lawful occupant of privately owned lands, etc.' may take, hunt, or kill on such lands predatory or destructive birds or mammals, (this in closed area).

"Court held this question could not be raised by owners, but only against those discriminated against. (304)."

The court on page 304 said:

"The purpose of this exception to the general rule of a 'closed season' within these refuges is apparent. The legislature sought to meet the objection to which appellant makes to the legislation as a whole—*that the effect of the 'closed season' would be that predatory game would be permitted to roam within the refuge at will and cause damage to the gardens and crops of private landowners*. (Emphasis supplied). In giving permission to lawful occupant of lands within the refuge to protect his property against invasion, the Section is a reasonable exercise of the legislative authority to regulate the protection of game within the respective districts. The Section does not permit such persons to hunt and kill game at will throughout the refuge as argued by appellant. The privilege is limited to the 'privately owned lands' upon which each lawful occupant, or his employees, may take, hunt, or kill 'predatory or destructive birds or mammals'."

The Court concludes that the claimants being powerless under the Statute to protect their property from wild geese would have a cause of action for negligence causing damages to their property.

The very effect of these statutory provisions amounts to an extension of Horseshoe Lake Preserve, by preventing claimants from protecting their property, and without acquiring additional rights by the payment of just compensation.

As to point 4 of the motion, the Court feels sufficient facts are set forth in the motion to state a cause of action.

As to point 5, the Court can see no basis for such contentions. If a continuing trespass, the Court would have jurisdiction every time damages occur.

The Court has read both of the cases in the Federal court, and can see no basis that the cause of actions were in any way similar.

Under the original Migratory Bird Treaty Act the Federal Government could not acquire lands to establish refuges. The amendment to the Act in 1929 gave the Government power to do so. *Bailey* v. *Holland, supra,* the basis of the holding, held that regulations closing 5,000 acres surrounding the refuge made it more effective, but drew a clear distinction in the acquisition of the refuge, and regulations under the treaty.

The Court, therefore, concludes that sufficient facts are stated in the amended complaint to state a cause of action, and the motion to dismiss is overruled.

---

Judge Lansden did not participate in the consideration and determination of this case.